SAMUEL MATHER and Others v. LONDON GUARANTEE & ACCIDENT COMPANY.[1]

March 13, 1914.

Nos. 18,512—(296).

**Accident policy — death from sunstroke.**

　　1. Action upon an accident policy insuring the employees of Pickands, Mather & Co., against bodily injuries suffered through external, violent, and accidental means. The policy as printed contained a provision that it did not cover casualties resulting from certain specific causes among which sunstroke was included. The assured wanted a policy which covered sunstroke and for this reason the word sunstroke was stricken from this provision. Deceased died from sunstroke. Under the facts of this case the court cannot hold as a matter of law that sunstroke is a disease and not such a casualty as was covered by the policy.

[1] Reported in 145 N. W. 963.

**Construction of contract — preliminary negotiations.**

2. Where the proper construction of a contract is not free from doubt, recourse may be had to the preliminary negotiations between the parties for the purpose of determining the correct construction to be given it.

Action in the district court for St. Louis county by the partners of the firm doing business under the name of Pickands, Mather & Co., the Hobart Iron Co., and the Northwestern Trust Co., as administrator of the estate of John Mozina, to recover $409.50. The answer denied that plaintiffs performed the conditions of the policy of insurance mentioned in the opinion requisite to entitle them to recover any sum whatever under the policy. The reply alleged that in any event defendant waived any further proof of the death of John Mozina, was fully advised of the accident to him, and through its agents made an investigation thereof prior to the commencement of the action, and denied liability under the policy solely upon the ground that it claimed the injury was not covered by the policy. The case was tried before Fesler, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict in favor of plaintiffs for $447.17. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Alexander Marshall,* for appellant.

*Washburn, Bailey & Mitchell,* for respondents.

TAYLOR, C.

Defendant issued to Pickands, Mather & Co., as trustees for their employees, an accident policy insuring such employees against accidental injuries. John Mozina, one of the employees so insured, while at work in a boiler room, suffered a "sunstroke" or "heatstroke" from which death ensued. Plaintiffs brought suit upon the policy and recovered a verdict. Defendant made the usual motion for judgment or for a new trial, and appealed from the order denying it.

It is conceded at the outset that sunstroke and heatstroke are synonymous, and mean a sudden prostration resulting from exposure to excessive heat, regardless of the source from which the heat ema-

nates. The controversy is whether the policy covers injury and death from sunstroke. Defendant contends that sunstroke is not an accident but a disease; that medical authorities class it as a disease; and that the courts have held that it is not an accident. Sinclair v. Maritime Pass. Assur. Co. 3 El. & El. 478; Dozier v. Fidelity & Casualty Co. (C. C.) 46 Fed. 446, 13 L.R.A. 114. On the other hand plaintiffs contend that the ordinary person regards sunstroke as an accident; that it is within the definition of an accident (Kerr, Insurance, 380; May, Insurance, §§ 518–520); that it is held to be an accident within the meaning of the English Workingmen's Compensation Act (Ismay, Imrie & Co. v. Williamson, 24 Times L. R. 881; Morgan v. Owners of Steamship Zenaida, 25 Times L. R. 446); and that giving the terms, accidental and sunstroke, their ordinary and popular meaning, instead of a technical one, brings sunstroke within the casualties covered by the policy. It is not necessary to determine these contentions as abstract propositions. The policy insured the employee against "bodily injuries suffered * * * through external, violent and accidental means." It contained a further provision that it did not cover "injuries, fatal or otherwise, received while or in consequence of being or having been under the influence of or affected by or resulting directly or indirectly from intoxicants, anaesthetics, narcotics, ~~sunstroke,~~ freezing, vertigo, sleep walking, fits, hernia, orchitis or any disease or bodily infirmity." This exception includes two classes of injuries: First, those "received while or in consequence of being or of having been under the influence of or affected by * * * intoxicants, anaesthetics, narcotics, sunstroke," etc., but not resulting from these causes. Second, those "resulting directly or indirectly from" such causes. The form of policy was prepared and printed by defendant. As so prepared and printed, injuries received in consequence of being under the influence of or affected by sunstroke, and injuries resulting from sunstroke were excepted from the casualties insured against. Before the assured accepted the policy in controversy, the word sunstroke was stricken out, as indicated in the paragraph quoted above, so that injuries received in consequence of being under the influence of sunstroke, and injuries resulting from sunstroke, are not expressly

excepted from the casualties covered by this policy. There was uncertainty as to whether injuries suffered through accidental means would include injuries resulting from sunstroke, and defendant, in preparing its policy, resolved the doubt in its own favor by expressly excepting them. As a result of the negotiations for this policy, sunstroke was stricken from the list of exceptions specified therein. Under the circumstances, this would indicate an intention to resolve the uncertainty respecting it in favor of the assured; especially so in view of the rule that insurance policies are to be construed liberally in favor of the assured, and doubtful and ambiguous questions resolved against the insurer. Where the proper construction of a contract is not free from doubt, recourse may be had to the preliminary negotiations between the parties for the purpose of determining the correct construction to be given it. Sandretto v. Wahlsten, 124 Minn. 331, 144 N. W. 1089, and cases there cited. Defendant's representative admitted that the word "sunstroke" was stricken from the exceptions because Pickands, Mather & Co. objected to it, and insisted that they wanted a policy which would cover sunstroke. The change was made for the purpose of giving them such a policy.

Under the facts and circumstances shown in this case, the court cannot hold as a matter of law that sunstroke was not covered by the policy. The issues were submitted to and determined by the jury and there is no sufficient ground for interfering with their conclusion. There were no reversible errors, either in the rulings upon the admission of evidence, or in the charge to the jury.

Order affirmed.